IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BILLIE WAGGONER,

        Plaintiff,

v.                                     Case No. 14-1320-JTM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## MEMORANDUM AND ORDER

Plaintiff Billie Waggoner seeks review of a final decision denying her claim for disability insurance benefits and supplemental income benefits under the Social Security Act. The Commissioner found that plaintiff was not disabled, despite having some impairments, because she retained the capacity to perform her past relevant work and other jobs that exist in the national economy. Plaintiff argues that the Commissioner erred by improperly assessing certain medical opinions and by making unsupported findings of fact concerning her credibility.

### I. Factual and Procedural Background

Plaintiff was 56 years old at the time of her alleged onset of disability on September 1, 2010.  Her work experience prior to that date included full time jobs as a driver, cook, fast food worker, pizza production worker, and warehouse employee.   In her application for benefits, plaintiff listed various impairments including neck, back and hip pain; incontinence; and emotional problems resulting from years of childhood

abuse and subsequent abuse by former spouses – abuse that allegedly included rape, beatings and torture.  Dkt. 13 at 138.

After her claim for benefits was initially denied, plaintiff requested a hearing before an Administrative Law Judge (ALJ). An evidentiary hearing was held on June 12, 2013, before ALJ James Harty in Wichita, Kansas.  Plaintiff testified at the hearing, as did vocational expert Cynthia Younger.

The ALJ issued a written opinion on July 12, 2013, finding that plaintiff was not entitled to benefits. Following the five-step process called for by the regulations, the ALJ first found that plaintiff had not engaged in any substantial gainful activity since the alleged onset of her disability on September 1, 2010. Second, he found plaintiff suffered from the following severe impairments: degenerative joint disease (DJD) of the cervical spine; schizoaffective disorder, bipolar type;  and posttraumatic stress disorder (PTSD). Third, the ALJ found that none of plaintiff's impairments met or medically equaled any of the impairments listed in the regulations.

Next, the ALJ determined plaintiff's residual functional capacity (RFC). He found plaintiff was physically capable of performing medium work as defined by the regulations (including the ability to lift and/or carry 50 pounds occasionally and 25 pounds frequently; and the ability with normal breaks to stand/walk/sit 6 hours out of an 8-hour workday). He found plaintiff could occasionally reach overhead but must avoid exposure to cold temperatures and vibration.  Finally, the ALJ found plaintiff can perform simple to intermediate tasks not performed in a fast-paced production

environment or as an integral part of a team, "and can occasionally interact with supervisors, coworkers and the general public." Dkt. 13 at 19.

At the fourth step of the process, the ALJ found that in light of plaintiff's RFC, she was capable of performing her past relevant work as a pizza production helper. In the alternative, he found at step five that plaintiff was capable of performing other jobs that exist in substantial numbers in Kansas and the national economy, including twisting machine operator, metal spraying machine operator, and laundry worker.  As such, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff contends the ALJ committed two related errors. First, she argues the ALJ improperly weighed the psychological opinions in the record. Despite the unanimous agreement of at least three mental health specialists that plaintiff could handle no more than superficial interactions with others, the ALJ found that plaintiff could occasionally interact with  supervisors, coworkers and the general public. Second, plaintiff contends the ALJ's finding that she could occasionally interact with others was based on a faulty interpretation of her testimony. Plaintiff argues the resulting finding of non-disability is not supported by substantial evidence and must be reversed. Dkt. 14 at 6-11.

## II.  Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

The court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 U.S. Dist. LEXIS 76220, at *3 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

An individual is under a disability only if he or she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *3 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The

steps are designed to be followed in order.  If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4-5 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5 (citing *Williams*, 844 F.2d at 751).  The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084.  The burden then shifts to the

Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id*.

### III. Analysis

Plaintiff challenges the ALJ's treatment of the medical opinions concerning her limited ability to interact with others. For purposes of review, a brief summary of that evidence is set forth below.

Plaintiff was employed full time up until September 2010. In December 2010, she was admitted to the Salina Regional Health Center emergency room. She was brought there by her boyfriend, who said he could no longer care for her appropriately and stated that she was a danger to herself. Dkt. 13 at 384. Among other things, plaintiff had spent long periods of time in a bathtub and had been found there on at least one occasion in a semiconscious state.  In the emergency room she was delusional and engaging in semi-violent behavior and required injections to calm down. *Id*. Matthew B. Carey, M.D., who was called in as a consulting physician, observed that plaintiff was "quite delusional" and noted that she reported a history of atrocities allegedly committed against her as a child, although plaintiff's sister assured Carey the stories were not true. Dkt. 13 at 385.  Plaintiff's sister, whom Carey found to be a reliable historian, reported that  plaintiff had a long history of mental health issues, including manic episodes marked by increased delusional thinking, irritated moods, and shouting at others, followed by depressive episodes lasting up to several months, where plaintiff was reclusive and she withdrew into her room. *Id*. The sister also reported that plaintiff has a history of suicide attempts and psychotic episodes dating back to her early

twenties, and that plaintiff took medication up until the time she lost custody of her children. Dkt. 13 at 386. Carey said it was "clear that [plaintiff] does have delusional thinking at present," and he diagnosed her with "schizoaffective disorder, bipolar type, versus bipolar disorder with psychotic features." Dkt. 13 at 388. He noted plaintiff "has a long history of what appears to be fairly severe and persistent mental illness, although her social history, if accurate, does indicate that she is able to hold down a job for several years at a time when she is doing well…." *Id*.

Plaintiff was examined in May 2012 by consulting psychologist Melvin Berg, Ph.D.  Among other things, Berg concluded that plaintiff suffered from symptoms of PTSD, which was manifested through irritability, difficulty sleeping and depressed mood.  Insofar as plaintiff's ability to work was concerned, Berg found she could process simple information at an average pace. He found she could accommodate the demands of superficial interpersonal interaction. He noted that plaintiff reported being irritable with others when she was preoccupied with memories of her past. Dkt. 13 at 429.

In August 2012, consultant Derek O'Brien, M.D., reviewed the mental limitations found by Berg. O'Brien agreed with Berg's assessment, including the limitation to superficial social interaction.  Dkt. 13 at 426. Charles Fantz, Ph.D., also reviewed the record (including Berg's report) in August 2012. Fantz found, among other things, that plaintiff "is limited  in her ability to work with the public and is best suited for work activity with minimal interaction with others, but can maintain appropriate interaction with supervisors and coworkers on a superficial level." Dkt. 13 at 123.

As plaintiff points out, the medical sources addressing plaintiff's mental impairments unanimously agreed that plaintiff was limited to engaging in superficial interaction. The ALJ rejected that limitation, however, finding plaintiff could engage in the more substantial "occasional" level of interaction. The ALJ explained his ruling by stating that plaintiff "testified that she does not have a problem with authority figures." Dkt. 13 at 21.   The ALJ conceded plaintiff had completed a form in which she "expressed some trouble interacting with certain types of people," but said she indicated on another form that "she has no problem getting along with others." Dkt. 13 at 21-22. Additionally, the ALJ noted plaintiff was pleasant and cooperative during a telephone interview conducted by a Social Security representative, according to the notes of the representative.  Dkt. 13 at 22 (citing Exh. 2E/2).

When evaluating a medical source opinion, an ALJ must consider the factors in 20 C.F.R. § 404.1527(c) and give good reasons for the weight he assigns to the opinion. *Vigil v. Colvin*, 2015 WL 5672613, * 1 (10th Cir. 2015).   In weighing a medical source judgment, an ALJ may not substitute his own medical judgment for that of medical professionals. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).

The ALJ's rejection of the unanimous opinion of medical professionals that plaintiff was limited to superficial interaction with others constituted error on two levels. First, the ALJ failed to consider the basis for the medical opinions or any of the evidence in the record tending to support the opinions. The ALJ did not address plaintiff's documented history of mental illness, nor did he discuss evidence in the record indicating that plaintiff has a severely limited ability to engage in social

8

interaction. Instead, the ALJ essentially substituted his own medical judgment for the opinions of the mental health specialists. *Cf. Winfrey*, 92 F.3d at 1022 (ALJ cannot interpose his own medical expertise over that of a physician). Second, the basis on which the ALJ determined that plaintiff can withstand a greater level of social interaction is insubstantial when considered in the context of the entire record. The ALJ rejected the doctors' opinions in part by stating that plaintiff "testified that she does not have a problem with authority figures." Dkt. 13 at 22.  That is not what plaintiff testified to at the hearing. When she was specifically asked about how the abuse she suffered would affect her perception of authority figures, she gave an equivocal response indicating she wasn't sure. Dkt. 13 at 53. Moreover, she testified that her emotional problems would likely affect her ability to relate to supervisors because she felt distant from them. Id. She also testified that she generally does not go outside the home,  that she does not socialize with friends, that she no longer has contact with her children, and that she has no hobbies. *See e.g.,*  Dkt. 13 at 39, 41, 49, 52. The ALJ did not address any of that evidence in reaching his conclusion. Id. The ALJ also asserted that plaintiff "indicate[d] in one form that she had trouble interacting with certain types of people …, but in another form she stated that she had no problem getting along with others (exhibit 13E/8)."  Dkt. 13 at 22.

While it is true that plaintiff checked a box on one form stating she had no problem getting along with "family, friends, neighbors, or others," she also stated in the same form that she never leaves the house, she has "pretty much isolated [herself] from people," and is in such pain at times that she wants "to end [her] life." Dkt. 13 at 294,

296.  Additionally, plaintiff noted on the same form that her condition affects her ability to get along with others and that she was previously fired because of such problems. Dkt. 13 at 260, 301.  A third-party report from a friend of plaintiff's tended to support her claims. Dkt. 13 at 266-67.  The ALJ did not consider any of this contrary evidence and instead overruled the unanimous opinion of the medical professionals on the basis of insubstantial evidence, including equivocal testimony.  That ruling amounted to error.

At the hearing before the ALJ, vocational expert Cynthia Taylor was asked about the ability of a hypothetical person of plaintiff's age and abilities to work. Assuming such limitations, including an ability to occasionally interact with others, Taylor testified such a person could perform several jobs, including plaintiff's past occupation as a pizza production worker.  If the ability to interact with others were limited to superficial contact, however, Taylor stated it would eliminate the occupations she cited because the ability to interact occasionally was a requirement of such unskilled positions. Dkt. 13 at 65.

Plaintiff argues on the basis of the above testimony that the case should be remanded to the ALJ with directions to award benefits. The Commissioner responds that if the matter is reversed, the proper remedy is a remand for further proceedings to give the ALJ "an opportunity to more thoroughly consider the aforementioned issues." Dkt. 19 at 9. Nowhere in the brief, however, does the Commissioner identify what factual issues the ALJ needs to thoroughly (re)consider before determining whether or not plaintiff is entitled to benefits.

The court has some discretion in determining whether an award of benefits is appropriate in these circumstances. The relevant factors to consider include the length of time the matter has been pending and whether or not, given the available evidence, remand for additional fact-finding would serve any useful purpose or would merely delay the receipt of benefits. *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006). It has now been over five years since the alleged onset of plaintiff's disability and over two years since the hearing before the ALJ. Given the unanimous medical opinion concerning plaintiff's inability to engage in social interaction, the absence of any issue identified by the Commissioner that warrants further fact-finding or that might lead to a different result, and the undisputed testimony of the vocational expert indicating that a person in plaintiff's circumstances who is limited to superficial interaction would be unable to perform any listed occupation, the court concludes that a remand for an immediate award of benefits is appropriate.

**IT IS THEREFORE ORDERED** this 7th day of October, 2015, that the final decision of the Commissioner is REVERSED and the matter is REMANDED to the Commissioner with directions to award plaintiff disability benefits beginning September 1, 2010.

s\ J. Thomas Marten
J. THOMAS MARTEN, JUDGE